**In re PARADISE PALMS VACATION CLUB, Debtor.**

**Ralph S. AOKI, Trustee of Paradise Palms Vacation Club, and the Federal Trade Commission, Appellants,**

v.

**Jocelyn JONES, Appellee.**

**In re WPMK CORPORATION, a Hawaii Corporation, Debtor.**

**Ralph S. AOKI, Trustee of Paradise Palms Vacation Club, and the Federal Trade Commission, Appellants,**

v.

**Jocelyn JONES, Appellee.**

**Civ. Nos. 82–0615, 82–0616.**

United States District Court,
D. Hawaii.

July 18, 1984.

James A. Wagner, Philip Doi, Honolulu, Hawaii, for Ralph S. Aoki, Trustee of Paradise Palms Vacation Club.

Dillon E. Jackson, Keller, Jacobson, Hole, Jackson & Snodgrass, Bellevue, Wash., Richard HL Lachmann, Stanton, Clay & Tom, Honolulu, Hawaii, for Jocelyn Jones.

Tamotsu Tanaka, Honolulu, Hawaii, for Thomas E. Hayes, Trustee of WPMK Corp.

Dean A. Fournier, Melanie Rowland and Judith A. Bendor, Federal Trade Com'n, Seattle, Wash., for F.T.C.

## OPINION AND ORDER

### FACTS

MARTIN PENCE, Senior District Judge.

This appeal arises in the context of two bankruptcy proceedings which are factually almost identical but which have not been formally consolidated. The cases will be treated together for the purpose of this appeal. The debtors, Paradise Palms Vacation Club and WPMK Corporation, are related companies which were engaged in a vacation time-sharing enterprise. Paradise Palms Vacation Club was a non-profit corporation that purchasers into the time-sharing plan joined as members, and WPMK was the developer and conducted sales of the club memberships.

In February of 1981, before the bankruptcy proceedings began, a Washington-based time-share operation called Harbor Village Club merged into Paradise Palms Vacation Club. As the surviving entity, Paradise Palms succeeded to all of Harbor Village Club's rights and obligations. The major obligation, of course, was to provide time-share services and accommodations to Harbor Village Club members.

Before Harbor Village Club merged into Paradise Palms, it had sold time-share memberships on an instalment payment basis and had received promissory notes. Harbor Village Club was required to follow Washington law with regard to these notes. Specifically, it was governed by the Washington Retail Instalment Sales Act, including Chapter 63.14 of the Revised Code of Washington.[1] Section 63.14.020

---

1. There was a great deal of argument before the Bankruptcy Judge as to whether Chapter 63.14

applies to the sale of time-share interests. The Bankruptcy Judge settled the controversy by

required Harbor Village Club to provide the buyers of its time-share interests with a single document containing the entire agreement, including any promissory notes or other evidence of indebtedness between the parties. Section 63.14.020 further required Harbor Village Club to include on that document a statement that assignment or negotiation of the note to a third party did not cut off any defenses or rights of action the buyer might have against the original seller. The Harbor Village Club notes did not include this statement.

This appeal stems from what happened to four of those Harbor Village Club notes. The four notes are now held by the appellee here, Jocelyn Jones. The makers of the four notes in question are Eades, Kincaid, Fields, and Davis. Before the merger, Harbor Village Club sold these four notes, among others, to Alpha-Omega, Inc. The endorsement was with recourse. Alpha-Omega then sold the Eades and Kincaid notes through its broker, Capital Mortgage and Finance Corporation, to appellee Jones. The endorsement to Jones was without recourse. For reasons unimportant to this appeal, Alpha-Omega negotiated the Fields and Davis notes without recourse first to the broker, Capital Mortgage, which later negotiated them and endorsed them without recourse to Jones.

Jones had bought the right to collect the payments made on the Harbor Village Club notes. The services that the makers of the notes paid for, however, were to be provided by Paradise Palms Vacation Club as Harbor Village Club's successor, not by Jones. When Paradise Palms went into bankruptcy, it became unable to provide the services that the buyers were paying for. To remedy this problem, the WPMK and Paradise Palms Trustees proposed a Plan of Reorganization that provided, *inter alia*, for the cancellation of instalment sales contracts by which individual buyers gave promissory notes to purchase time-share services from either Harbor Village Club or Paradise Palms Vacation Club. Because most of the makers of the notes under these contracts were still making payments to Paradise Palms and WPMK, not to third parties like Jones, the anticipated effect of the cancellation was simply that Paradise Palms members would be able to stop paying Paradise Palms for services that they were no longer receiving.

On June 25, 1982, at the hearing on confirmation of the proposed Plan, Jones objected to the cancellation of her four notes. Jones made several objections, but the one important to this appeal is her argument that she is a holder in due course of the four notes and that therefore the makers of the notes cannot assert against her their defenses against the original payee.[2] Upon hearing this objection, the Bankruptcy Judge requested additional memoranda from counsel on the holder in due course issue. A hearing was held on July 9, 1982, during which no evidence was presented and no factual determinations were made. On August 5, 1982, the Bankruptcy Court entered an Order Sustaining Objection of Jocelyn Jones and exempting

holding that the chapter did apply. That holding is not on appeal and it has become final.

**2.** Jones claimed also that the bankruptcy court lacked jurisdiction to cancel the notes. Her claim had something of subject-matter jurisdiction in it, as she argued that the cancellation of the notes was not an action arising in or related to a case under Title 11 of the United States Code. But her claim also partook of personal jurisdiction, as she argued that she was not a creditor of the estate and couldn't be made to submit to the court's jurisdiction. This court finds that these contentions are meritless. Jones has cited no limitation on the bankruptcy court's jurisdiction, and she voluntarily submitted to the court's jurisdiction over her per-

son. Moreover, the Designation of Issue on Appeal filed September 23, 1982, indicates that only the holder in due course question is before this court. While this court recognizes that subject matter jurisdiction can be brought up at any time, it bears repeating that Jones' arguments on that point are wholly without merit. As for personal jurisdiction, if objections to the exercise of jurisdiction are not brought up in a timely fashion, they are waived. *See Moore v. Great Western Savings & Loan Association*, 513 F.2d 688 (9th Cir.1975). Jones has clearly waived her objection here. This court will therefore limit its consideration to the holder in due course issue.

her from the Plan (which was, in all other respects, confirmed).

The Trustees filed a Motion for Reconsideration on August 12, 1982. Jones filed a memorandum in opposition. On September 1, 1982, the Bankruptcy Judge entered an order Granting in Part and Denying in Part Trustees' Motion for Reconsideration. It is that order that is now on appeal. The relevant language is included in Paragraphs 4 and 6 of the Order. Paragraph 4 provides as follows:

> 4. In order to preserve his rights and defenses under Chapter 63.14, a maker must comply with the requirements of said Chapter. Section 63.14.020 provides that "[any] such promissory note ... shall not, when assigned or negotiated, cut off as to third parties any right of action or defense which the buyer may have against the seller, and each such promissory note ... shall contain a statement to that effect ...."

In the instant case, the makers of the note had failed to insert in the promissory notes the statement required by Section 63.14.020 to alert a third-party purchaser of the preservation of the original rights and defenses of the maker. Thus, said makers do not come within the protection of Section 63.14.020 and a bona fide purchaser for value of such notes may cut off the rights and defenses which the maker may have against the original payee.

Paragraph 6 of the Order directs that

> Since the notes purchased by Jones did not contain the statements required by Section 63.14.020 to preserve the makers' defenses and rights against a third party, unless the makers can prove otherwise, Jones has all the privileges and rights of a holder in due course.

The issue on appeal is whether the Bankruptcy Judge erred in holding that Washington law allows Jones to be a holder in due course. Appellants, trustees for Paradise Palms and WPMK, urge that, as a matter of Washington law, Jones cannot be a holder in due course, even though the notes were missing the required legend.

The Bankruptcy Judge, they argue, therefore erred in holding that Jones should be afforded protection as a holder in due course. Appellants further argue that because Jones is not a holder in due course the Trustees' Plan should be applied to her, even over her objection, because without holder in due course status the Plan does not adversely affect her. This would follow from the test relevant to confirmation of reorganization plans in Chapter 11, laid out in 11 U.S.C. § 1129(a)(7)(A), namely whether the objecting creditor will receive as much under the plan as she would have if the debtor were liquidated under Chapter 7 of the Code. Appellants point out that in a liquidation, Jones would receive nothing because the makers have a complete defense against Paradise Palms, surviving entity of the original payee of the note: because of the bankruptcy and liquidation, there is a failure of consideration and the makers are not obligated to perform further. Under the Plan, Jones is treated as an unsecured creditor of the WPMK bankruptcy estate, and she may in fact receive some money. Therefore, the Trustees argue, the bankruptcy court's order should be reversed and the plan confirmed in full.

## ANALYSIS

### I

■ The first question is the appropriate standard of review when a district court decides an appeal from a bankruptcy court. In this district, the so-called emergency rule provides that the district judge may "accept, reject, or modify, in whole or in part, the order or judgment ... of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge." Rule Relating to Bankruptcy Proceedings e(2)(B) (D. Hawaii Dec. 23, 1982). The Ninth Circuit, however, has held that the proper standard of review is the "clearly erroneous" standard for the Bankruptcy Court's findings of fact. The Bankruptcy Court's conclusions of law are fully reviewable under a *de novo* standard. *In re Dill,* 731 F.2d 629, 631 (9th Cir.1984). *Cf. In Re AOV Industries,* 31 B.R. 1005 (D.D.C.1983)

(proper standard of review for findings of fact was the substantial evidence test).

## II

It is illuminating to examine the practical effects that attend a decision on the holder in due course issue. If the Bankruptcy Judge was correct, and Jones is a holder in due course unless proven otherwise, then the makers of the four notes she holds must continue to make payments to Jones even though Paradise Palms cannot give them the services they are paying for. If Jones is protected by holder in due course status, the makers of the notes cannot assert against her the complete defense of failure of consideration that they would be able to assert against Paradise Palms. It would follow that under 11 U.S.C. § 1129(a)(7)(A), the cancellation of the notes provided for by the Plan could not apply to Jones. Under the Plan, she would receive only the possibility of money distributed to her as an unsecured creditor, whereas a liquidation would not affect her right to continue collecting payment, because it would not provide the makers of the notes with any defense that they could assert against her.

On the other hand, if Jones is not a holder in due course, she took the notes subject to the rights and defenses the makers have against the original payee. If that is the case, quite different consequences follow. The makers of the notes can assert against Jones the same defense of failure of consideration that they could succeed with against Paradise Palms, and they can avoid paying for the now non-existent time-share services. It follows that if Jones is not a holder in due course, the trustees' Plan can apply to her even over her objection, because under a straight liquidation the makers would not have to pay Jones anything, whereas under the Plan she might receive some money.

## III

With the practicalities of this appeal in mind, this court turns now to the question of law before it. The Washington Retail Instalment Sales Act protects consumers who sign retail instalment sales contracts by abolishing the holder in due course status of any subsequent holder of the contract or note and permitting the consumer to assert claims and defenses that he would have had against the original seller against the third party. Does a consumer lose that protection if he signs a note that does not include the warning, required by Section 63.14.020, to future holders of the note that they are subject to all claims and defenses that the maker has against the original seller? When reduced to its essence the question is this: between the consumer and the future third-party noteholder, which must suffer the consequences of the absence of the Section 63.14.020 warning to the third-party buyer?

The bankruptcy court held that makers of notes in the consumer retail instalment context have an affirmative duty to insert into those notes the warning to future holders. If the consumers fail in that duty, the bankruptcy court held, future holders of the note are not subject to the buyer's claims and defenses, and therefore they may be holders in due course.

To determine the correctness of this holding, this court turns to the language of Section 63.14.020, to the structure of the Retail Instalment Sales Act, to the legislative history, and to Washington case law.

### A.

The plain language of Section 63.14.020 does not indicate that the protection it affords the consumer is contingent on the inclusion of the warning legend in the note. The statute provides that the note *"shall not,* when assigned or negotiated, cut off as to any third party any right of action or defense which the buyer may have against the seller, *and* each promissory note ... shall contain a statement to that effect ...."* (emphasis added). There is no indication that rights of action or defenses may be preserved only if the warning statement is included; no contingency relationship, nor indeed any causal connection at all, is implied between the

abolition of holder in due course status and the requirement that the warning statement be included. Moreover, there certainly is no indication that it is incumbent on the buyer to insert the warning into the contract.

Washington courts have held that where statutory language is plain and unambiguous, the meaning of the statute must be derived from the wording of the statute itself. *Petition of Lehman,* 93 Wash.2d 25, 604 P.2d 948, 949 (1980). This court holds that the plain language of Section 63.14.020 does not condition the consumer protection upon inclusion of the warning, nor does it place the inclusion of the warning on the consumer's shoulders.

### B.

Examination of the structure of the Retail Instalment Sales Act reinforces a finding that the buyer cannot be made to forfeit rights of action or defenses because the warning statement is not included on the contract. Two sections in particular lead to this conclusion. First, Section 63.-14.150 provides that a consumer cannot contract away the right to assert a claim against the seller or against the seller's assignee: any provision in a contract by which the buyer makes such an agreement is invalid. Second, Section 63.14.160 prohibits the application of waiver against a buyer. It provides that "no act or agreement of the retail buyer before or at the time of the making of a retail instalment contract ... shall constitute a valid waiver of any of the provisions of this chapter or any remedies granted to the buyer by law."

If a consumer cannot contract away the right to assert a claim against the original seller, and if no knowing and voluntary agreement can constitute a valid waiver, then it would be incongruous to hold that inadvertently signing a contract that is missing the required warning is a waiver. If a consumer cannot waive rights by an express provision in the contract, surely it does not make sense to find waiver in a contract that is absolutely silent on the issue (by virtue of the omission of the required warning). Yet this was the holding of the bankruptcy court: although a consumer cannot knowingly and expressly contract away or waive his rights, he can give them up implicitly and by mistake. This court finds that such a holding subverts the consumer protection that is so unequivocally provided in several parts of the Retail Instalment Sales Act, and that the judicial gloss that the bankruptcy court has placed on the Act therefore must be removed.

### C.

The climate surrounding the passage of Washington's Retail Instalment Sales Act also proves instructive here. During the manifold expansion of consumer credit in the 1950s and 1960s, state legislators became aware that unscrupulous sellers in the consumer retail area were taking advantage of holder in due course laws. Sellers would execute contracts and promissory notes with consumers, immediately sell the notes to a third party, and then default on the sales. The third party, protected by holder in due course status, was impervious to defenses that the consumers could assert against the seller, and the consumers therefore had to continue making payments on goods or services they never received. This forced consumers to bear the entire loss, in that their only recourse was to sue the seller, who was generally impossible to find or judgment-proof.

To correct this problem, state legislators looked for ways to shift the risk of seller misconduct from the consumer onto the third-party financer, reasoning that the third party would be better able to return the costs of the seller's misconduct to the responsible seller. Note, *Direct Loan Financing of Consumer Purchases,* 85 Harv.L.Rev. 1409, 1413 (1972). One way of doing this was to eliminate the holder in due course status altogether for holders of consumer paper: as one commentator describes this approach, "a holder of an otherwise negotiable note becomes an assignee, subject to the obligor-buyer's defenses against the seller-assignor." Comment, *A*

*Case Study of the Impact of Consumer Legislation: The Elimination of Negotiability and the Cooling-Off Period,* 78 Yale L.J. 618, 635 (1969). Washington was one of the states that adopted this method, and it eliminated holders in due course altogether in Chapter 63.14. *Id.,* at 635, n. 64.

Given this background to the enactment of Section 63.14.020, it seems inconceivable that a third-party noteholder could become a holder in due course simply because the note did not contain the required warning to third parties. If this were true, then sellers could simply leave the warning off of their pre-printed sales contracts, negotiate the signed notes to third parties who would become holders in due course, and default on the sale. In other words, the very situation that Section 63.14.020 was designed to remedy would be recreated.

A reading of the statute that would allow such a result is clearly incorrect. The history of laws such as Washington's Retail Instalment Sales Act dictates the alternative reading: that the holder in due course status is absolutely eliminated, and the requirement of the warning to third-party purchasers of consumer paper simply indicates the legislature's determination that third party holders of such consumer paper should be forewarned that they are subject to the buyer's rights and defenses. Washington's Retail Instalment Sales Act is a risk-shifting statute in that it transfers the burden of seller misconduct from consumer to third-party financer. Any risk that stems from the seller's failure to include the required warning must devolve onto the third party as well, for to make the consumer bear that risk would contravene the reasoning behind, and nullify the effect of, the entire statute. Once again, it is clear that the third party holder is better able than the consumer to return to the original seller the costs associated with the seller's failure to include the warning.

### D.

A look at the case law in this area is necessarily brief, for there are no Washington cases dealing with the absence of the required warning to third parties. There are cases, however, in which various of the other formal requirements of Section 63.14.020 (e.g., the single-document rule) were not fulfilled and consumers sued the sellers. These cases hold that the requirements are operative on the seller, not on the buyer; the Retail Instalment Sales Act was meant to protect consumers, not to impose duties on them. *Lookebill v. Mom's Mobile Homes, Inc.,* 16 Wash.App. 817, 559 P.2d 600, 603–04 (1977); *Atlas Credit of California, Inc. v. Hill,* 15 Wash. App. 146, 547 P.2d 894, 898–99 (1976). By analogy, these cases point to the conclusion that the third party warning is another of the formal requirements that the Act imposes on the retail seller. It is a form of seller misconduct if the seller fails to include the warning, and the absence of the warning cannot affect the consumer buyer's rights in any way.

### E.

■ All of these considerations draw this court ineluctably toward the conclusion that the absence of the warning to third-party holders did not make Jones a holder in due course. The issue on appeal here pits the innocent parties, Jones on one side and the makers of the notes on the other, against each other, while Harbor Village Club, the party that failed to comply with the law, cannot be brought into the fray because it is in bankruptcy. As between the makers of the notes and Jones, the third-party holder of consumer paper, Washington law dictates a preference for the makers—even if Jones is blameless. This does not leave Jones without the possibility of a remedy. The initial endorsement from Harbor Village Club to Alpha-Omega was with recourse, so Jones may be able to make a claim against Harbor Village Club through the Paradise Palms bankruptcy estate. Jones may also be able to sue Capital Mortgage, the broker that sold her the defective notes. The only thing Jones may not do is continue to collect payments from the makers of the notes.

The determination of the bankruptcy court was incorrect and must be reversed. Washington law has absolutely abolished holder in due course status for holders of retail consumer paper, and it does not provide for exceptions where sellers fail to inform third-party holders that they are subject to the buyer's claims and defenses. The Washington statute makes no requirement that the buyer must preserve his rights by inserting the warning onto a contract that the seller almost always prepares in advance, and the absence of the warning may not be construed as a waiver of a consumer's rights. Jones is not a holder in due course, and the Plan may be applied to her over her objection. Therefore, the bankruptcy court's Order Granting In Part and Denying In Part Trustees' Motion for Reconsideration must be reversed. The bankruptcy court must confirm the Plan in its entirety.

IT IS SO ORDERED.