146

ATLAS CREDIT OF CALIFORNIA, INC., *Appellant*, v. CLIFFORD
A. HILL, ET AL, *Respondents*.

*Breskin, Rosenblume & Robbins* and *Arnold B. Robbins*,
for appellant.

*Black, Christensen & Nielsen, Inc., P.S.*, and *Andrew T.
Nielsen*, for respondents.

JAMES, J.—The single question presented by this appeal
is whether a transaction in the form of a written contract
to "install, construct and place . . . improvements"
(exhibit No. 1) in defendants Hills' home was in reality a

device for the exaction of illegal interest. The trial judge concluded that it was and imposed penalties as provided by Washington's usury statute, RCW 19.52.030.

We do not agree.

The undisputed facts are that Superior State Construction Company, Inc., approached the Hills with a proposal to make improvements to their home under favorable terms so that "before" and "after" photographs of their work could be displayed at a home show. The Hills advised Superior State that no matter how good the proposal was, they could not consider it because they would need $1,000 to pay off current obligations before they could consider going into debt for the remodeling of their home.

Superior State offered to loan the Hills $1,000 if they would agree to have the improvements made. The Hills agreed.

Superior State then prepared a written contract entitled "PURCHASE ORDER," which was signed by the parties on October 20, 1965. It generally describes the materials to be provided and work to be performed, but does not price each item. It assigns instead a total price for all the work. Following the description of the improvements is written, "Upon completion of this work customer to receive a check for $1,000.00 from the company." Exhibit No. 1, in part. The "Unpaid Cash Balance Payable on completion of said work" is stated to be $3,900. The contract further describes a "Deferred Payment Plan" as follows:

> Deferred Payment Plan evidenced by a promissory note of the Owner providing for equal monthly payment of $82.76 per month for EIGHTY-FOUR months. (Payments include all finance charges.)
>
> First payment to be made APRIL 1966 (days) after completion of work.

Exhibit No. 1, in part. It is immediately apparent that under the deferred payment plan, the Hills would be obligated to pay $6,951.84 (84 x $82.76).

On October 25, 1965, Superior State obtained the Hills' signatures to a document entitled "RETAIL INSTALLMENT

CONTRACT" which substantially confirmed the terms of the October 20 purchase order and further obligated the Hills "to execute and deliver to the Seller a lien on the real property on which the building(s) improved hereby are situated. Said security lien to be in a form satisfactory to the Seller." Exhibit No. 7, in part. The contract, however, does not reveal that Superior State had loaned the Hills $1,000.

The October 25 contract recites that "[t]he undersigned Seller hereby sells and the undersigned Buyer(s), having been offered both a cash price and a time price, hereby purchases, if more than one jointly and severally, the below described goods and services for the time price and upon the terms and conditions set forth herein." Exhibit No. 7, in part. There follows a "Description of Goods and Services being purchased" which is the same as is described in the purchase order. In the space provided for listing the "Cash price of each item," there is posted the lump sum of $3,742. A sales tax of $158 is added to provide a "Total Cash Price" of $3,900. The sum of $3,900 is also listed as the "Unpaid Balance." This figure is followed by a charge for insurance in the amount of $364.97 to provide a total of $4,264.97 which is designated as the "Principal Balance." A "Finance Charge" of $2,686.87 is added to make a "Time Balance" of $6,951.84.

On December 3, 1965, Superior State prepared a document entitled "NOTICE OF CLAIM OF LIEN." It recites that "[t]his claim has been assigned and set over to Atlas Credit of California, Inc. for valuable consideration." Exhibit No. 4, in part. The document was recorded at the request of Atlas on December 7, 1965. The October 25 "Retail Installment Contract" was also assigned to Atlas. Atlas did not learn of the $1,000 loan included in the "Purchase Order" contract until shortly before trial. Atlas concedes, however, that it "stands in the shoes of its assignor." Finding of fact No. 1, in part.

The Hills made 59 payments of $82.76 for a total of $4,882.84 before refusing to make any more payments.

Atlas brought this action to foreclose its lien claiming an unpaid balance of $2,069.60. By cross complaint, the Hills alleged that the contract was usurious and sought a judgment for "twice the amount of the interest paid" as provided by RCW 19.52.030.

The trial judge found that of the $4,882.84 paid by the Hills, $2,779.43 should be applied to principal and $2,103.40 to interest. He found that the Hills had paid $662.87 as "excess" interest and awarded them judgment for twice that amount in the sum of $1,245.74. He dismissed Atlas' complaint with prejudice.

Atlas concedes that the "service" charges included in the $6,951.84 deferred payment plan price were in excess of the maximum permitted for the loan or forbearance of money or its equivalent by Washington's usury statute, RCW 19.52. Atlas contends, however, that under the rule of *Hafer v. Spaeth*, 22 Wn.2d 378, 156 P.2d 408 (1945), the usury statute does not apply since the transaction between Superior State and the Hills was a sale on credit governed by Washington's retail installment sales of goods and services act, RCW 63.14. Atlas points out that as of the date of the contract, RCW 63.14 regulated transactions

> in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract or a retail charge agreement, . . . which provides for a service charge, . . . under which the buyer agrees to pay the unpaid balance in one or more installments.

Laws of 1963, ch. 236, § 1(5), p. 1222. By definition, "services" included

> work, labor or services of any kind when purchased . . . for . . . household use . . . and [included] repairs, alterations or improvements upon or in connection with real property, . . .

Laws of 1963, ch. 236, § 1(2), p. 1221. Atlas contends that under these definitions, the transaction is a sale and not a loan or forbearance of money or its equivalent. Further,

Atlas points out that as of the date of the contract, RCW 63.14 had no limitation respecting interest rates.[1]

Our analysis of the transaction must begin with the recognition that in 1967 the Washington legislature declared that, as a matter of public policy, usury laws "are enacted in order to protect the residents of this state from debts bearing burdensome interest rates; . . ." RCW 19.52.005. In so doing, the legislature confirmed a frequently reiterated judicial observation that "[u]sury has long been recognized as a social and economic evil affecting not only the parties to the transaction but society in general." *Busk v. Hoard*, 65 Wn.2d 126, 127, 396 P.2d 171 (1964). Where, as here, the issue is whether the transaction was a good faith time sale or a camouflaged loan, courts will look beyond the form to find the essential substance of the agreement made by the parties.

We are mindful that in cases involving alleged usury the law has regard only for the actual facts, and searches for the real transaction between the parties, disregarding evasions, subterfuges and all kinds and varieties of camouflage. *Home Sav. & Loan Ass'n v. Sanitary Fish Co.*, 156 Wash. 80, 286 Pac. 76 (1930).

*Clausing v. Virginia Lee Homes, Inc.*, 62 Wn.2d 771, 773, 384 P.2d 644 (1963). *Accord, Busk v. Hoard, supra; Hafer v. Spaeth, supra;* Restatement of Contracts § 529 (1932).

In *National Bank of Commerce v. Thomsen*, 80 Wn.2d 406, 411, 495 P.2d 332 (1972), while noting that there is now respectable authority to the contrary, our Supreme Court acknowledges that "the majority of courts adhere to the view that a conditional sale is not a 'loan or forbearance.'" Although urged to do so by Justice Hale in his concurring opinion, the majority in *National Bank of Commerce* declined to overrule *Hafer v. Spaeth, supra,*

---

[1]The retail installment sales act was amended by chapter 234, Laws of 1967 and, for the first time, the maximum rate chargeable for the privilege of making installment payments was fixed at 18 percent per annum. *See* Laws of 1967, ch. 234, § 3(2)(d), p. 1133. Subsequently, by the enactment of Initiative 245, effective December 5, 1968, the maximum rate was lowered to 12 percent. RCW 63.14.130.

which adopts the acknowledged majority rule. *Schmitt v. Matthews,* 12 Wn. App. 654, 531 P.2d 309 (1975).

In *National Bank of Commerce,* however, the court did look beyond the form of the conditional sale contract in question and determined that it was "a security device to protect the institution which loaned the defendant the money to purchase the automobile." *National Bank of Commerce v. Thomsen, supra* at 415. The decision is based upon the majority's finding that the automobile dealer acted as the bank's agent in offering financing for the car purchase. The majority found that the actual transaction was a *direct* loan to the purchaser who used the proceeds of the loan to pay cash for the automobile. The opinion emphasizes that "at the moment the contract was signed, the defendant became indebted, not to the dealer, but, in accordance with the terms of the contract, to the plaintiff." *National Bank of Commerce v. Thomsen, supra* at 414.

The trial judge made no similar finding in this case and the evidence would not have supported such a finding. The transaction at bar was a 2-step transaction. The Hills became indebted to Superior State upon signing the October 20 purchase order. The installment contract was sold to Atlas on December 3, 1965, some 6 weeks later. No evidence would permit a finding that Superior State acted as an agent of Atlas in negotiating a direct loan to the Hills.

We, therefore, examine the transaction as it involved only Superior State and the Hills. Both the purchase order and the contract clearly provide both a cash price and a time price. A bona fide retail installment sale on credit at a price which exceeds the cash price by more than the legal rate of interest for the loan or forbearance of money does not constitute usury. Annot., 14 A.L.R.3d 1065, 1077 (1967); *Hafer v. Spaeth, supra.* The trial judge did *not* find that the Hills were *not* offered both a cash and a credit price. Were it not for the $1,000 loan, the transaction would clearly not be subject to the usury statute. RCW 19.52.

Atlas concedes, however, that (1) the interest attributable to the $1,000 loan surreptitiously included in the condi-

tional sale contract is computable, and (2) that the interest reserved is, mathematically, usurious. Atlas argues, however, that we should reject the Hills' claim of usury in connection with the $1,000 loan because they failed to meet their burden of proving an essential element of usury, *i.e.*, "an intent to exact more than the legal maximum for the loan or forbearance." *Hafer v. Spaeth, supra* at 383. Atlas points out that the trial judge made no finding of such intent.

■ We agree. The trial judge erred by imposing the penalties for usury provided by RCW 19.52.030 in the absence of findings that the Hills had established all of the elements of usury by a preponderance of the evidence.

> [W]here the burden of proving usury is upon the appellant, the trial court must find that each of the elements of usury exists, and the absence of such findings where the evidence is controverted amounts to a finding that such elements do not exist. *Baillargeon v. Press*, 11 Wn. App. 59, 521 P.2d 746 (1974); *McCutcheon v. Brownfield*, 2 Wn. App. 348, 467 P.2d 868 (1970). In this regard, there is no requirement that the trial court expressly make such a negative finding, which, in any event is implicit in its decision. *Fugitt v. Myers*, 9 Wn. App. 523, 513 P.2d 297 (1973).

*Schmitt v. Matthews, supra* at 659.

■ We hold, however, that despite the trial judge's incorrect application of the usury statute, nevertheless, Atlas must still be denied recovery. As of the date of the transaction, RCW 63.14.180 provided as follows:

> Any seller who enters into any contract or agreement which does not comply with the provisions of this act or who violates any provision of this act except as a result of an accidental or bona fide error shall be barred from the recovery of any service charge, official fees, or any delinquency or collection charge under or in connection with the related retail installment contract or purchases under a retail charge agreement; but the seller may nevertheless recover from the buyer an amount equal to the

cash price of the goods or services and the cost to the seller of any insurance included in the transaction.[2]

Laws of 1963, ch. 236, § 18, p. 1233. RCW 63.14.020 provided in part as follows:

> Every retail installment contract shall be contained in a *single document* which shall contain the *entire agreement of the parties* including any promissory notes or other evidences of indebtedness between the parties *relating to the transaction,* . . .

(Italics ours.) Laws of 1963, ch. 236, § 2, p. 1224. As we have related, the parties executed two documents, each of which purported to memorialize their agreement. RCW 63.14.040 provided in part as follows:

> The retail installment contract shall contain . . . a description or identification of the goods sold or to be sold, or services furnished or rendered or to be furnished or rendered. The contract also shall contain the following
> . . .
> (1) The cash sale price of *each item* of goods or services.

(Italics ours.) Laws of 1963, ch. 236, § 4, p. 1225. As we have related, both documents listed the goods and services to be provided and performed, but only one price was assigned to the total of goods and services. There was no pricing of each item as required by the act. Because the installment contract did not comply with the requirements of RCW 63.14.020 and RCW 63.14.040, Atlas is barred from the recovery of any service charge.

Atlas' recovery is, therefore, limited to the sum of $4,264.97, which consists of the contract price of $3,900 and the charge for insurance in the amount of $364.97. The evidence establishes that the Hills have paid Atlas a total

---

[2]Effective January 1, 1968, RCW 63.14.180 was amended by the Laws of 1967, ch. 234, § 10 to provide additional penalties similar to those provided by RCW 19.52.030 for usury.

of $4,887.84. The Hills are, therefore, entitled to a judgment in their favor for the sum of $622.87.[3]

Affirmed as modified.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied August 30, 1976.

[No. 3035-1. Division One. March 22, 1976.]

---

[3]For a similar conclusion, see Justice Stafford's dissent in *National Bank of Commerce v. Thomsen*, 80 Wn.2d 406, 495 P.2d 332 (1972).