[No. 59444-9.    En Banc.    February 24, 1994.]

PUGET SOUND NATIONAL BANK, *Respondent*, v. THE
DEPARTMENT OF REVENUE, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *Robert J. Fallis, Assistant,* for appellant.

*Eisenhower & Carlson,* by *Donald L. Anderson,* for respondent.

*C. James Judson* on behalf of Washington Bankers Association, amicus curiae for respondent.

Guy, J. — The Washington State Department of Revenue appeals from a summary judgment entered by the Thurston County Superior Court which granted Puget Sound National Bank a retail sales tax refund under RCW 82.08.037. We accepted direct review and hold that Puget Sound National Bank is entitled to the refund.

## Background

Puget Sound National Bank (Bank) is a national banking association member authorized to do business in the state of Washington. As part of its normal course of business, the Bank purchases installment contracts from automobile dealers (dealers). The dealers enter into installment contracts with retail car buyers (buyers) to allow buyers to purchase an automobile over a period of time. When the dealers enter into an installment contract with a buyer, the dealers must pay to the State of Washington Department of Revenue (Department) the full amount of the sales tax due on the purchase price of the automobile. WAC 458-20-198.

Between January 1, 1986, and December 31, 1989, the Bank purchased installment contracts on a nonrecourse basis from local automobile dealers who sold the automobiles to buyers at retail in the state of Washington. This case involves 665 of these transactions.

In each of these transactions, the Bank paid the dealer the balance due on the retail installment contracts, including the uncollected portion of the state sales tax. In return, the dealers assigned to the Bank all their rights in the installment contracts. After assignment, many buyers defaulted on their payments. The Bank repossessed the automobiles and usually sold them at a loss. That loss was then written off as a worthless debt for federal tax purposes.

Between January 1, 1986, and March 30, 1988, the Bank repossessed and sold 182 automobiles that were subject to the installment contracts assigned to the Bank. The income tax loss resulting from the sale of these vehicles was $484,572.05. The sales tax refund claim on the loss was $37,804.42 (tax rate of 7.8 percent). The Bank petitioned the Department for a refund of the $37,804.42 pursuant to RCW 82.08.037. The Department denied the petition.

Between April 1, 1988, and December 31, 1989, the Bank suffered losses for federal income tax purposes on an additional 483 automobiles that were repossessed and sold. The Bank declared losses totaling $1,537,350.17 from which it claims a tax refund of $119,913.31 (tax rate of 7.8 percent).[1] The combined refund, claimed and denied, totals $157,717.73.

On December 31, 1990, the Bank filed an appeal of the Department's ruling in Thurston County Superior Court. Both parties subsequently filed cross motions for summary judgment. On October 31, 1991, the trial court entered a summary judgment in favor of the Bank. The court held that the Bank was a "seller" under RCW 82.08.037 and was entitled to a refund for the sales tax paid on the worthless debts. The court awarded judgment against the Department

---

[1] The record is silent on whether this second claim was made part of the petition to the Department or if any action was taken by the Department on the second claim.

for a total principal amount of $157,717.73. The court also awarded to the Bank $14,358.50 for prejudgment interest, $125 for attorney fees, and $127 for allowable costs.

On November 26, 1991, the Department filed a notice of appeal. The Court of Appeals certified the Department's appeal to this court. We accepted certification and affirm.

## ISSUE

Whether the Bank, as assignee of nonrecourse installment sales contracts, is entitled to a sales tax refund under RCW 82.08.037.

## ANALYSIS

The statute permitting a sales tax refund is RCW 82.08-.037, which provides:

> A *seller* is entitled to a credit or refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes.

(Italics ours.) A seller is defined as "every *person*, including the state and its departments and institutions, making sales at retail or retail sales to a buyer or consumer". (Italics ours.) RCW 82.08.010(2). A person is defined as "any individual, receiver, administrator, executor, *assignee*, trustee in bankruptcy, trust, estate, firm, copartnership, joint venture, club, company . . .". (Italics ours.) RCW 82.04.030. Unraveled, RCW 82.08.037 has three requirements: (1) the seller must be a person, (2) making sales at retail, and (3) entitled to a refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes.

The Bank is requesting a sales tax refund under RCW 82.08.037. To be entitled to a sales tax refund, the Bank must satisfy all three requirements of RCW 82.08.037. The Bank satisfies requirement one because the Bank, as assignee, is a person. The Bank satisfies requirement three because the Bank took a worthless debt deduction for federal income tax purposes relating to the installment contracts. The Bank did not, however, "make sales at retail". It is undisputed that the dealer made retail sales. In order for the Bank to satisfy requirement two, and thus be eligible for a sales tax refund,

the assignment of the installment contracts must satisfy the "making sales at retail" requirement. To determine whether this tax attribute is passed to the Bank in assignment, general assignment law must be applied.

■ A fundamental understanding of commercial law is that all contracts are assignable unless such assignment is expressly prohibited by statute or is in contravention of public policy. *Schultz v. Werelius*, 60 Wn. App. 450, 453, 803 P.2d 1334, *review denied*, 116 Wn.2d 1027 (1991); *International Comm'l Collectors, Inc. v. Mazel Co.*, 48 Wn. App. 712, 716-17, 740 P.2d 363 (1987). Tax statutes are no exception.

> As a general rule, contracts with the state and with municipal corporations are, in the absence of statutory limitation or restriction, assignable. The assignability of tax claims is, of course, subject to any statutory limitation or restriction upon the assignment of claims against the government, such as a restriction upon assignment before ascertainment of the amount due and its allowance by proper administrative authorities. *But in the absence of express statutory provision against assignment of claims against the government, the assignability of a claim for tax refund is sustained by the weight of authority . . ..*

(Footnotes omitted. Italics ours.) 72 Am. Jur. 2d *State and Local Taxation* § 1076 (1974).

### No Statutory Prohibition Against Assignment

RCW 82.08.037 does not expressly prohibit the assignment of a sales tax refund. The dissent argues that because "assignee" was omitted from the definition of seller while included in the definition of buyer, the Legislature intended to prohibit the assignment of a sales tax refund by a seller. The dissent's argument overlooks the inclusion of "assignee" in the definition of seller as required by RCW 82.08.010(2), 82.08.010(4), and 82.04.030. In RCW 82.08.010(2) a seller is defined as "a person". RCW 82.08.010(4) then provides that the definition of "person" for purposes of RCW 82.08 is the definition as given in RCW 82.04. The definition of person in RCW 82.04 is as follows:

> "Person" or "company", herein used interchangeably, means any individual, receiver, administrator, executor, *assignee,*

trustee in bankruptcy, trust, estate, firm, copartnership, joint venture, club, company, joint stock company, business trust, municipal corporation, political subdivision of the state of Washington, corporation, association, society, or any group of individuals acting as a unit, whether mutual, cooperative, fraternal, nonprofit, or otherwise and *the United States or any instrumentality thereof.*

(Italics ours.) RCW 82.04.030. Thus, contrary to the dissent's argument, both a seller and a buyer include an assignee although set forth in a different manner for purposes of RCW 82.08.037.

As a matter of policy, the Legislature has not prohibited the assignment of claims against the State. An illustration of a government prohibiting the assignment of claims against itself is the federal government's anti-assignment act. 31 U.S.C. § 3727. The anti-assignment act prohibits the assignment of any claim against the United States unless the requirements of 31 U.S.C. § 3727 are satisfied. *E.g., United States v. Sinton Dairy Foods Co.*, 775 F. Supp. 1417 (D. Colo. 1991) (assignment of a potential tax refund, which did not comply with anti-assignment act, was voidable at the government's discretion). If our Legislature wished to prohibit the assignment of claims against the State, the Legislature would have enacted a state anti-assignment act. Absent an express prohibition in RCW 82.08.037 or an anti-assignment statute, the assignment of the sales tax refund is permitted if it does not violate public policy.

No Public Policy Prohibition Against Assignment

Public policy does not prohibit the assignment of a sales tax refund. The most recent case that discussed the assignability of a tax refund is *Slater Corp. v. South Carolina Tax Comm'n*, 280 S.C. 584, 314 S.E.2d 31 (Ct. App. 1984). At issue in *Slater* was a tax provision that allowed a credit or refund for sales taxes erroneously, improperly or illegally assessed, collected or paid by sellers who are subject to the sales tax requirement. 280 S.C. at 586. The court held that an assignee of a seller could recover the credit or refund: "We hold that Slater, as assignee of the various sellers from whom it purchased food supplies, acquired their rights to collect refund of sales taxes erroneously, improperly or ille-

gally, assessed, collected or paid". 280 S.C. at 588. *Slater* stands for the general proposition that claims against the government, absent express statutory language, are assignable and do not violate public policy. In addition, *Slater* holds that statutory rights are coextensive with a contract and follow the assignment of that contract.

■ The dissent also argues that tax statutes should be narrowly construed. The policy reason for construing a tax statute narrowly, however, is not present. Strict construction is intended to protect the State from unanticipated losses. Here, the State was already prepared to give dealers a sales tax refund. In fact, if the dealers had not assigned their installment contracts to the Bank, the dealers would have been entitled to a sales tax refund under RCW 82.08.037. Thus, under a direct claim or an assigned claim, if the requirements of RCW 82.08.037 are satisfied, the State must refund the prepaid sales taxes. Any other rule is inequitable and entitles the State to a financial windfall merely because an assignment took place.

■■ An important policy reason for permitting the assignment of a tax refund claim under RCW 82.08.037 is to ensure that commercial paper continues to travel freely in the marketplace. If this court permits assignment of certain contractual or statutory rights, while prohibiting others, parties to an assignment will be unable to determine what rights and liabilities transfer in assignment. This dilemma will only breed inconsistencies and uncertainty into the law of assignment. For example, an assignment should generally transfer both a tax liability and a tax benefit. Under RCW 82.08.090, the Legislature empowered the Department to adopt appropriate regulations whereby the Department may collect taxes on installment sales along with each of the buyer's installment payments.[2] The

---

[2]RCW 82.08.090 provides:

"In the case of installment sales and leases of personal property, the department of revenue, by regulation, may provide for the collection of taxes upon the installments of the purchase price, or amount of rental, as of the time the same fall due."

Department has not adopted such regulations, but instead requires the tax to be remitted in the period in which the sale occurs. WAC 458-20-198, -235. However, if sales taxes were collected in installments, RCW 82.08.050 would impose on the seller the responsibility for collecting the tax from the buyer with each installment payment.[3] This leads to a dilemma for the Department, for if the seller assigns the installment contract, then that assignee must assume the tax burden of collecting the tax from the buyer. The tax liability of a seller under RCW 82.08.050 would be transferred to the assignee. The Department agrees. Notwithstanding this position, the Department maintains that the tax *benefit* of a seller under RCW 82.08.037 may not likewise be transferred by assignment. It is inconsistent and capricious for the Department to hold that an assignment transfers a tax *liability* but not a tax *benefit*.

The Department's inconsistency is also demonstrated by its tax treatment over leasing of tangible personal property. RCW 82.04.050(4). The lease itself is a contract for a series of transactions, *Gandy v. State*, 57 Wn.2d 690, 695, 359 P.2d 302 (1961), and each transaction is treated as a retail sale for purposes of the retail sales tax. RCW 82.08.020(3). The Department's rulings have held that leases of tangible personal property may be assigned, and that such assignment carries with it the original lessor's tax liability to collect the retail sales tax and pay it to the Department. *See* Dep't of Rev. Det. 88-169, 5 Wash. Tax Dec. 257 (1988).

> Even if the taxpayer did not make the actual sales . . . the contracts were assigned to the taxpayer. The taxpayer now has all of the rights of the contract vendor and also the tax liabilities.

---

[3]RCW 82.08.050 provides in part:

"The tax hereby imposed shall be paid by the buyer to the seller, and each seller shall collect from the buyer the full amount of the tax payable in respect to each taxable sale . . .. The tax . . . shall be deemed to be held in trust by the seller until paid to the department . . ..

"In case any seller fails to collect the tax herein imposed . . . he or she shall, nevertheless, be personally liable to the state for the amount of the tax."

5 Wash. Tax Dec. at 260. As the above-referenced statutes, case law and Department ruling indicate, public policy does not prohibit the assignment of a tax refund.

### Attributes of Assignment

■ The final inquiry is to determine what rights pass in assignment. An assignee of a contract "steps into the shoes of the assignor, and has all of the rights of the assignor." *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 495, 844 P.2d 403 (1993). The assignee's rights include not only those identified in the contract, but also applicable statutory rights. *Schultz v. Werelius*, 60 Wn. App. 450, 455, 803 P.2d 1334 (Petrich, J., dissenting), *review denied*, 116 Wn.2d 1027 (1991).

For example, in *Estate of Jordan*, persons whose escrow funds had been embezzled were assigned the escrow agent's right of action against the insurer that had contracted with the agent to provide the fidelity bond required by statute. We held that the bond statute, RCW 18.44.050, rendered the insurer liable to the embezzlement victims as the insured's assignees. 120 Wn.2d at 497-502. Similarly, in *Atlas Credit of Calif., Inc. v. Hill*, 15 Wn. App. 146, 153, 547 P.2d 894 (1976), the assignee was denied recovery of the full amount due under the assigned retail installment contract because the contract, as originally entered into by the assignor, failed to comply with specific statutory provisions applicable to retail installment contracts. *See also, e.g., First Interstate Bank v. Larson*, 475 N.W.2d 538 (N.D. 1991) (first mortgagee assigned interest in property to second mortgagee, who then became subject to statutory provisions precluding recovery of losses incurred in resale of property); *Thompson v. Crawford*, 833 S.W.2d 868 (Mo. 1992) (assignee is subject to statute of limitations as applied to assignor).

These cases support the conclusion that an assignment carries with it the rights and liabilities as identified in the assigned contract, but also all applicable statutory rights and liabilities. To hold otherwise would be contrary to the rule that the assignee acquires whatever rights the assignor

possessed prior to the assignment. This rule is critical because whether a commercial paper transaction involves a borrowing or purchase, the lender or buyer must have confidence that the law is clear as to the rights and liabilities involved. Uncertainty as to the attributes of assignment, as would be created under the dissent's analysis, would inhibit certain routine commercial lending transactions and increase costs to borrowers and sellers of commercial paper until settled by future litigation.

■ Here, the dealers assigned their installment contracts to the Bank. The Bank thereupon stepped into the dealers' shoes and assumed the dealers' status with respect to all the rights and liabilities related to those contracts. Under RCW 82.08.037 the status of the Bank includes the dealers' prior tax attribute of "making sales at retail". Since the assignment of the installment contracts carried with it the "making sales at retail" requirement, the Bank is entitled to a sales tax refund under RCW 82.08.037. The Department's decision to deny the sales tax refund to the Bank ignores basic tenets of assignment law and is arbitrary and inconsistent.

## CONCLUSION

We hold that the Bank is entitled to the sales tax refund. Accordingly, we affirm the summary judgment entered by the trial court.

ANDERSEN, C.J., and BRACHTENBACH, DURHAM, and JOHNSON, JJ., concur.

UTTER, J. (dissenting) — I dissent because the majority misconstrues the statute and overlooks the general principle that tax statutes conferring deductions should be construed narrowly. RCW 82.08, in its definition section, specifies:

> (2) *"Seller" means every person, including the state and its departments and institutions, making sales at retail or retail sales to a buyer or consumer,* whether as agent, broker, or principal, except "seller" does not mean the state and its departments and institutions when making sales to the state and its departments and institutions;

(3) *"Buyer"* and "consumer" include, without limiting the scope hereof, every individual, receiver, *assignee,* trustee in bankruptcy, trust, estate, firm, copartnership, joint venture, club, company, joint stock company, business trust, corporation, association, society, or any group of individuals acting as a unit, whether mutual, cooperative, fraternal, nonprofit, or otherwise, municipal corporation, quasi municipal corporation, and also the state, its departments and institutions and all political subdivisions thereof, irrespective of the nature of the activities engaged in or functions performed, and also the United States or any instrumentality thereof[.]

(Italics mine.) RCW 82.08.010.

Examining these two subsections together, it is apparent that if the Legislature had intended "seller" to include assignee it would have included it in its definition of "seller". It did not do so. The absence of "assignee" from the definition of "seller", considered in conjunction with its inclusion in the definition of "buyer", strongly suggests the Legislature intended "buyer" to include assignee, but did not intend "seller" to include assignee. For that reason, RCW 82.08.037 does not entitle Puget Sound National Bank (the Bank), as an assignee, to claim a deduction, because the provision applies to "sellers":

A *seller* is entitled to a credit or refund for sales taxes previously paid on debts which are deductible as worthless for federal income tax purposes.

(Italics mine.) RCW 82.08.037.

I also take issue with the majority's conclusion the Bank should be treated as a seller, because it reads out of the definition of "seller" the phrase "making sales at retail or retail sales to a buyer or consumer". RCW 82.08.010(2) provides:

"Seller" means every person . . . making sales at retail or retail sales to a buyer or consumer, whether as agent, broker, or principal[.]

It is true RCW 82.08.010(4) permits us to look to the definition of "person" in RCW 82.04, and that RCW 82.04.030 includes "assignee" in its definition of "person". The fact the definition of "seller" includes "assignee" does not support the majority's disposition of the case, however.

The reason is as follows: Supplementing the definition of "seller" in RCW 82.08.010(2) with the definition of "person" in RCW 82.04.030 (which includes "assignee") permits us to read "seller" in RCW 82.08.010(2) as "every person [*including an assignee*] . . . making sales at retail or retail sales to a buyer or consumer . . .". (Italics mine.)

The Bank still loses because, to qualify as a "seller" under RCW 82.08.010(2), it must *make sales at retail or retail sales.* There is no evidence in the record that the Bank makes such sales. It is therefore not entitled to a tax refund under RCW 82.08.037, which grants tax refunds or credits to "sellers".

Finally, I disagree with the majority's disposition of this case because it overlooks the principle that tax statutes conferring credits, deductions and refunds are generally construed narrowly. *See In re All-State Constr. Co.,* 70 Wn.2d 657, 665, 425 P.2d 16 (1967); *Corporation of Catholic Archbishop v. Johnston,* 89 Wn.2d 505, 507, 573 P.2d 793 (1978). As the Washington assignment cases the majority cites do not involve the application of a tax statute, I do not find them controlling, nor even persuasive. *See Estate of Jordan v. Hartford Accident & Indem. Co.,* 120 Wn.2d 490, 495, 844 P.2d 403 (1993); *Atlas Credit of Calif., Inc. v. Hill,* 15 Wn. App. 146, 153, 547 P.2d 894 (1976).

If the Legislature wishes banks and other lending institutions to be benefited by operation of RCW 82.08.037, it is free to amend the statute.

SMITH and MADSEN, JJ., concur with UTTER, J.

Reconsideration denied May 11, 1994.