**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

APRIL 30, 2026

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 30, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | ) ) ) ) ) | No. 104182-9 (certified 2:24-cv-01589-LK) |
| MIKRAE E. PRESTON, | ) ) | En Banc |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Filed: <u>April 30, 2026</u> |
| SB&C, LTD., aka SKAGIT BONDED COLLECTORS, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

JOHNSON, J.—The District Court for the Western District of Washington certified a question of state law arising in a class action lawsuit alleging violation of the Washington Consumer Protection Act (CPA), ch. 19.86 RCW; the Washington

Collection Agency Act (CAA), ch. 19.16 RCW; and the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692.[1] After some, but not all, of the plaintiff's claims were dismissed, the federal court certified the following question to the Washington Supreme Court:

> Do the requirements of RCW 70.170.060(8)(a) apply to a collection agency collecting on a hospital debt, as opposed to a hospital itself?

Ord. Certifying Question to Wash. Sup. Ct. (Order) at 22.

We answer yes and hold that they do. Collection agencies collecting on hospital debt are required to provide patients with notice of charity care[2] under the plain language of RCW 70.170.060(8)(a) and the policy of the charity care act.[3]

FACTS AND PROCEDURAL HISTORY[4]

In 2017, plaintiff Mikrae Preston received medical care at Skagit Valley Hospital and was subsequently billed for that care. At the time Preston received care, her alleged income fell within the limit that would allow her to qualify for charity

---

[1] Three amicus briefs were filed in this case. Columbia Legal Services et al. and National Association of Consumer Advocates et al. filed briefs on behalf of Preston. ACA International filed a brief on behalf of SB&C.

[2] Charity care is a program developed by the Washington State Legislature that requires hospitals to provide financial aid to help people pay hospital bills. *Hospital Patient Information and Charity Care*, WASH. DEP'T OF HEALTH, https://doh.wa.gov/data-statistical-reports/healthcare-washington/hospital-and-patient-data/hospital-patient-information-and-charity-care [https://perma.cc/K99K-LDW4].

[3] To avoid confusion between the different statutes discussed in this case, the charity care act will be referred to exclusively as "charity care act" to avoid confusion with the CAA, which is the Collection Agency Act.

[4] The facts assumed in analyzing the state law question come from the pleadings filed in the district court and submitted to us as part of the case record.

care. Under the Washington charity care act, ch. 70.170 RCW, a hospital is required to determine whether a patient is eligible for charity care and, if so, assist them in applying for charity care coverage. RCW 70.170.060(5). This screening must precede collection efforts directed at the patient. RCW 70.170.060(10)(a), (c). Preston alleges the hospital did not determine whether she was eligible for coverage before billing her for medical services and thereafter attempting to collect.

The hospital in this case assigned its claim to Skagit Bonded Collectors LLC (SB&C), a debt collection agency. SB&C filed a lawsuit to collect on the claim and was granted a judgment against Preston. SB&C's collection complaint did not include any disclosures about Washington's charity care program. Preston alleges she did not learn about the availability of charity care until she appeared in the suit after SB&C obtained the judgment for the full balance of the hospital debt.

A few months after judgment was entered, Preston applied and was approved for a 30 percent reduction in the balance of her bill to Skagit Valley Hospital. SB&C informed her that it would not honor the reduction because the Skagit Regional Health financial assistance policy provided that accounts for which a court has awarded judgment are not eligible for financial assistance.

Preston filed this complaint[5] in Skagit County Superior Court, naming SB&C as the only defendant. Her complaint alleged both per se and non-per-se CPA violations. Specifically, Preston alleged violations of the CPA, CAA, and FDCPA. SB&C removed the action to the United States District Court for the Western District of Washington and filed a motion to dismiss and an alternative motion to certify a question to this court. The district court granted SB&C's motion to dismiss in part and deferred in part, granting the alternative motion to certify the question to this court.

The district court dismissed some of Preston's claims and retained others pending this court's answer to the certified question. Specifically, the district court dismissed Preston's claims under the CAA.[6] The court then divided the remaining claims into a "failure-to-screen" theory and a "failure-to-notify" theory. The federal court dismissed the "failure-to-screen" theory, finding that nothing in the charity care act conditions the assignment or collection of hospital debt by a collection agency on the hospital's compliance with the charity care screening requirements. Order at

---

[5] The complaint includes class action allegations representing multiple classes that are yet to be certified. Clerk's Papers Doc. 1-1, at 9.

[6] The CAA claim was dismissed because the notice requirement applicable directly to collection agencies went into effect over a year after the events took place and did not apply to SB&C at the time alleged. The district court also found insufficient facts to establish SB&C was a "debt buyer" under the CAA, so the disclosure requirements did not apply. Order at 15.

13. The district court reserved ruling on the remaining CPA and FDCPA[7] claims to await this court's answer to the certified question.

Preston alleged SB&C's failure to give notice regarding the availability of charity care is unfair and deceptive under the Washington CPA. Clerk's Papers (CP) Doc. 1-1, at 14-16. She also alleged that SB&C falsely represented the character, amount, and legal status of the debt it sought to collect in violation of the FDCPA. CP Doc. 1-1, at 16-17.

ANALYSIS

A federal court may certify a question of local law to the Washington Supreme Court when, in the federal court's opinion, "it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined." RCW 2.60.020. These questions of law are reviewed de novo based on the certified record provided by the federal court. *Kellogg v. Nat'l R.R. Passenger Corp.*, 199 Wn.2d 205, 215, 504 P.3d 796 (2022).

The federal court retains jurisdiction over the underlying case. When an issue is not within the question certified and is within the province of the federal court, this court will not reach the issue. *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 470-71, 553 P.3d 626 (2024). In this case, the federal court has asked us to

---

[7] References to the CPA are to the Washington Consumer Protection Act, whereas the FDCPA is the federal Fair Debt Collection Practices Act. The FDCPA is the federal counterpart to the CAA, not the CPA, despite the similarity in acronyms.

determine whether the requirements under RCW 70.170.060(8)(a) apply to collection agencies collecting on hospital debt based on Preston's CPA and FDCPA claims. Although Preston's Washington CPA and federal FDCPA claims were both not dismissed, we limit our analysis to the state law claim. The federal law issue remains in the province of the federal court. We answer yes and hold that under the plain language of RCW 70.170.060(8)(a) and the public policy of the charity care act, "other written communications concerning billing" applies to collection agencies collecting on hospital debt. Here, the failure to provide notice of charity care when collecting on hospital debt violates the public policy of the charity care act and may provide evidence of a non-per-se CPA violation.

The Washington CPA declares "unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. RCW 19.86.020. To prevail in a CPA action, a plaintiff must establish five distinct elements: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce, (3) public interest impact, (4) injury to the plaintiff in their business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The first two elements may be established by showing that the alleged act constitutes a per se unfair trade practice, which exists where the legislature declares that a statutory violation constitutes an unfair or deceptive act. For example, specific statutory requirements under the CAA and FDCPA create per se

6

CPA violations. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53, 204 P.3d 885 (2009).

But this is not the exclusive way the first two elements can be established. In *Klem v. Washington Mutual Bank*, we held that falsifying dates by a notary employee of the trustee in a nonjudicial foreclosure is an unfair or deceptive act under the CPA. 176 Wn.2d 771, 793-95, 295 P.3d 1179 (2013). This was true even though it had not been legislatively declared a per se CPA violation. Similarly, in *Greenberg*, we held that even though price gouging is not regulated by statute in Washington, it can constitute an unfair or deceptive act in violation of the CPA. 3 Wn.3d at 454. The legislature declared the CPA "shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920. Accordingly, the rule our cases establish is that an unfair or deceptive act or practice under the CPA may be predicated on a per se violation of a statute *or* an unfair act or practice not regulated by statute but constituting a violation of the public interest. The above cases illustrate how a non-per-se CPA violation, such as that presented by the certified question, can be pursued.

A plaintiff can pursue a non-per-se CPA claim absent a clear statutory violation. In other words, in this case, SB&C's conduct does not need to violate the charity care act, or any other statute for that matter, to constitute an unfair or deceptive act or practice. Preston can succeed in a non-per-se CPA claim by

proving each of the five distinct elements set out in *Hangman Ridge*. Here, our analysis is limited to the first element: whether SB&C's failure to provide any notice of benefits available under the charity care act can constitute an unfair or deceptive act or practice. Conduct can be unfair or deceptive where it violates the public interest. Unfair or deceptive conduct that violates the public interest may be based on actions contrary to a comprehensive statutory scheme, like, as alleged in this case, the charity care act. The policy of this statutory scheme is expressly included in a specific provision of the act establishing the legislature's intent where it stated:

> (2) The legislature finds that rising health care costs and access to health care services are of vital concern to the people of this state. It is, therefore, essential that strategies be explored that moderate health care costs and promote access to health care services.
>
> (3) The legislature further finds that access to health care is among the state's goals and the provision of such care should be among the purposes of health care providers and facilities. Therefore, the legislature intends that charity care requirements and related enforcement provisions for hospitals be explicitly established.

RCW 70.170.010. The legislature found that access to health care is essential—necessitating a process by which those otherwise unable to pay for their medical services can access charity care.

SB&C would have us limit their liability to requirements that exist under the CAA, that is, to recognize only per se CPA claims. But this is contrary to what we stated in *Panag* when we recognized that "the CPA is intended to provide broader

protection than exists under the common law or statute." 166 Wn.2d at 54. In

*Panag*, two consolidated cases involving automobile accidents were resolved

where the drivers claimed underinsured motorist benefits from their insurer. The

insurers hired a collection agency, which sent collection notices that appeared to

represent an amount due but were actually subrogation claims. We held that a CPA

claim may be predicated on the deceptive characterization of an unadjudicated

insurance subrogation claim, even though this practice was not directly regulated

by the FDCPA or CAA. We explained that

> debt collection affects the public interest, and collection agencies are
> subject to strict regulation to ensure they deal fairly and honestly with
> alleged debtors. The strong public policy underlying state and federal
> law regulating the practice of debt collection also applies where
> collection practices do not fall within the laws' prohibitions.

*Panag*, 166 Wn.2d at 54.

Where conduct is beyond the scope of the CAA, that does not mean it is

exempt from suit under the broader scope of the CPA. SB&C argues that the

current notice requirement under the CAA forecloses any CPA claim for their

alleged conduct because it is redundant with the charity care notice requirements.

They assert that the 2019 amendment to the CAA alone requires collection

agencies to include "a notice that the debtor may be eligible for charity care from

the hospital, together with contact information for the hospital." RCW

19.16.250(29)(a). Because the event here occurred before the enactment of the CAA notice requirement, SB&C argues the addition of this requirement must mean it was not previously actionable in this type of case where collection agencies failed to give notice of charity care benefits when collecting on hospital debt. We disagree. That argument assumes the *only* way a collection agency can violate the CPA is through a per se violation. The fact that no notice requirement existed under the CAA at the time this claim arose does not foreclose the argument that SB&C's failure to provide such notice was unfair or deceptive under the CPA, even where it is not a per se violation. The addition of specific requirements or prohibited practices under the CAA does not mean those actions were previously lawful. As examples, the CAA also now prohibits impersonating a police officer, engaging in the unauthorized practice of law, and communicating "in such a manner as to harass, intimidate, threaten, or embarrass a debtor." RCW 19.16.250(4), (5), (13). These prohibited practices were not lawful before being added as specific requirements under the CAA. Similarly, the charity care notice requirement under the CAA, enacted in 2019, does not indicate that collection agencies previously had no charity care notice obligations.

Despite the intensive regulation of collection agencies, the CPA is intended to be broad enough to reach "unfair or deceptive conduct that inventively evades regulation." *Panag*, 166 Wn.2d at 49. SB&C's argument would narrow the CPA to

apply only to those situations where a CAA requirement establishes a per se violation. That argument ignores the breadth of the CPA. Here, before charity care notice was expressly required under the CAA, SB&C's failure to provide such notice could still be unfair or deceptive under the CPA. A violation of the underlying policy of the charity care act can constitute a non-per-se CPA violation.

The parties argue that *Fairway Collection, LLC v. Turner* should be instructive to our conclusion in this case. 29 Wn. App. 2d 204, 540 P.3d 805 (2023). It is not. The analysis in *Fairway* is not dispositive here because it dealt exclusively with per se CPA violations. Here, we analyze only Preston's non-per-se claim under the CPA. In *Fairway*, the Court of Appeals held that genuine issues of material fact existed as to whether Fairway violated the FDCPA and the CAA, which both constitute per se CPA violations.[8] The court did not address whether failure to provide notice was unfair or deceptive under the CPA because the court did not separately address the plaintiff's non-per-se CPA claims. *Fairway*, 29 Wn. App. 2d at 226 n.24. Further, the court did not state that Fairway was required to provide the exact notice under RCW 70.170.060(8)(a), rather that the failure to provide *any* notice could amount to a violation of the FDCPA. Similarly, our

---

[8] The issue of whether RCW 70.170.060(8)(a) applied to collection agencies was not before the court in *Fairway*. Like Preston, the plaintiff brought claims under the CPA, CAA, and FDCPA.

holding here means that the failure to provide any notice may be unfair or deceptive under the CPA.

The broader policy underlying the charity care act requires repeated disclosures of the availability of charity care benefits. Its provisions are aimed at implementing practices whereby eligible low-income patients can have their medical costs reduced to mitigate the financial burden of health care. This advances the goal of ensuring access to health care services regardless of ability to pay. Without notice of the act's potential benefits, the statutory purpose could be denied. The statute requires hospitals to "develop, implement, and maintain a policy which shall enable indigent persons access to charity care." RCW 70.170.060(5). Under the statute, an "initial determination of sponsorship status shall precede collection efforts directed at the patient." RCW 70.170.060(10)(c). Related regulations require that eligibility be determined "at the time of admission or as soon as possible following the initiation of services to the patient." WAC 246-453-020(1)(b). In 2018 and 2019, the legislature amended the charity care act and the CAA to include additional notice requirements regarding the availability of charity care. RCW 70.170.060(8)(a); RCW 19.16.250(29)(a). The policy of the charity care act is not to regulate hospitals; it is to deal with medical debt and its effect on eligible patients. The consumer—in this case, the patient—is entitled to notice of possible benefits under the charity care act to address the legislature's

concern regarding medical debt. If we concluded that assignment to a collection agency deprived eligible patients of that benefit, the policy behind the charity care act would be eliminated. We hold that the requirements of RCW 70.170.060(8)(a) apply to a collection agency collecting on hospital debt. Failure to do so can violate the public policy of the charity care act.

Preston argues that even if the notice requirements in the charity care act did not apply directly to collection agencies collecting on hospital debt, it applies to them as an assignee of the hospital. We agree. The requirements of the charity care act do not disappear on assignment. Rather, the assignee "'steps into the shoes'" of the assignor and the assignment carries with it all applicable statutory rights and liabilities. *Puget Sound Nat'l Bank v. Dep't of Revenue*, 123 Wn.2d 284, 292, 868 P.2d 127 (1994) (quoting *Est. of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 495, 844 P.2d 403(1993)). While there may be differences in the exact statutory responsibilities of hospitals as compared to collection agencies, the policy of the charity care act indicates that providing notice of charity care entirely underpins the benefits that the statute should provide. Without notice, access to benefits under the charity care act disappear. The act's notice requirement reads:

> All hospital billing statements and other written communications concerning billing or collection of a hospital bill by a hospital must include the following or a substantially similar statement prominently displayed on the first page of the statement in both English and the second most spoken language in the hospital's service area:

13

> You may qualify for free care or a discount on your hospital bill, whether or not you have insurance. Please contact our financial assistance office at ... (website) ... and ... (phone number) ....

RCW 70.170.060(8)(a). In interpreting a statute, the court's fundamental objective is to ascertain and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the statute's meaning is plain, then the court must carry out that plain meaning. Here, the statute says, "All hospital billing statements *and other written communications concerning billing* or collection of a hospital bill by a hospital" must contain notice of charity care. RCW 70.170.060(8)(a) (emphasis added). This plain language shows what the legislature intended: patients must be notified of charity care before being billed or the potential benefits are lost. The legislature could not have intended for the assignment of hospital debt to eliminate the notice requirement. Thus, collection agencies assigned hospital debt fall under "other written communications" concerning hospital bills.

Where a hospital fails to provide the required notice, it does not follow that the assignee—the collection agency—can receive an assignment greater than what the assignor—the hospital—can convey. This would deprive the patient of the benefit of charity care in violation of the statutory policy. The sample notice provided in the statute need not be recited verbatim to comply with the

14

requirements under RCW 70.170.060(8)(a). Rather, the law states that "a substantially similar statement" is acceptable. RCW 70.170.060(8)(a). But as the hospital's assignee, the statutory duty to provide notice of charity care passes to the collection agency.

CONCLUSION

We answer yes to the certified question and conclude that the requirements of RCW 70.170.060(8)(a) apply to a collection agency collecting on hospital debt. The statute's plain language includes "other written communications concerning billing" in the types of communication required to provide notice of charity care. RCW 70.170.060(8)(a). The policy underlying the charity care act establishes that patients are entitled to notice of charity care so those eligible can access financial aid designated to them *before* paying their bill. This illustrates that the charity care notification requirement applies to all billing concerning hospital debt. Further, the general principles of debt assignment require that the statutory rights and liabilities pass from assignor to assignee—the obligations under the charity care act do not disappear upon assignment.

Johnson, J.

WE CONCUR:

Stephens, C.J.

Mungia, J.

González, J.

Gordon McCloud, J.

Yu, J.P.T.

Whitener, J.

*Preston v. SB&C, Ltd.*

No. 104182-9

MADSEN, J.P.T.[*] (dissenting)—The federal district court certified one question to us:  whether the requirements of RCW 70.170.060(8)(a) apply to a collection agency collecting on a hospital debt.  The majority answers yes.  To reach this conclusion, the majority stretches the statute to encompass debt collection agencies and, through an inaccurate application of assignment law, imposes on those agencies what the legislature intended to be a hospital-only duty.  The majority also spends the bulk of its time exploring Mikrae Preston's Consumer Protection Act (CPA) "unfair or deceptive" trade practice claim and comments that failure to adhere to the charity care act's policies may provide evidence of such non-per-se CPA claims—*issues that are not before us*. Ch. 19.86 RCW; ch. 70.170 RCW.

I would limit our analysis to the certified question and answer no, the plain language of RCW 70.170.060(8)(a) applies only to hospitals collecting on a hospital debt.

---

[*] Justice Barbara Madsen is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

DISCUSSION

1.  The Charity Care Act Notification Statute

The certified question asks whether the requirements of RCW 70.170.060(8)(a) apply to a collection agency collecting on a hospital debt, so I would start there, applying our traditional tools of statutory interpretation.

The meaning of a statute is a question of law we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The court's fundamental objective is ascertaining and carrying out the legislature's intent. *Id.* If the statute's language is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. *Id.* at 9-10.

Where the statutory language is plain and unambiguous, courts will not construe the statute but will glean legislative intent from the statutory terms. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451-52, 210 P.3d 297 (2009) (quoting *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005)). A court "'is required to assume the Legislature meant exactly what it said and apply the statute as written.'" *Id.* at 452 (quoting *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997)). We employ traditional rules of grammar in discerning plain language. *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010).

RCW 70.170.060(8)(a) provides, in relevant part:

> All hospital billing statements and other written communications concerning billing or collection of a hospital bill *by a hospital* must include the following or a substantially similar statement . . .

2

> You may qualify for free care or a discount on your hospital bill, whether or not you have insurance. Please contact our financial assistance office at . . . (website) . . . and . . . (phone number).

(Emphasis added.)

The phrase "by a hospital" is critical. Here, "by a hospital" operates as a prepositional phrase indicating the relationship between two parts of the sentence—the object of the preposition (hospital billing and other written communications) and the source or means acting on that object (by the hospital). THE CHICAGO MANUAL OF STYLE §§ 5.172, .176, at 279-80 (17th ed. 2017). In short, RCW 70.170.060(8)(a) states that all billing and collections communications *made by a hospital* must include a specific notification about charity care.

The specific notification language required by the statute also supports this reading. Subsection (8)(a) references "*our* financial assistance office." RCW 70.170.060 (emphasis added). As the defendant points out, there is no law or regulation requiring a third-party collection agency to provide financial assistance or maintain a financial assistance office. Def.'s Opening Br. at 10. The reference to such an office can reasonably apply only to a hospital.

By its plain terms, RCW 70.170.060(8)(a) is limited to billing communications sent or made by a hospital and not a debt collection agency. The majority, however, comes to the opposite conclusion. Though the majority asserts its conclusion is supported by the plain language, its reasoning tells a different story—elevating what the majority sees as good public policy over the plain language of the statute.

3

The majority's statutory interpretation comes after it recites the policy goals of the charity care act and then relies exclusively on a single word. The majority references the terms "'other written communications concerning billing *or* collection of a hospital bill by a hospital,'" majority at 13-14 (emphasis added) (quoting RCW 70.170.060(8)(a)), apparently agreeing with Preston's argument that the "or" is disjunctive and "by a hospital" modifies only the "collection of a hospital bill." Pl.'s Answering Br. at 40-41. But application of this "last antecedent rule" leads to a nonsensical result.

As previously discussed, subsection (8)(a) mandates that a billing notification include a website and phone number for a financial aid office. Yet collection agencies are not required to have, and are unlikely to have, such offices. The majority's interpretation means that collection agencies will use subsection (8)(a)'s notification language when informing patients about charity care—telling patients to contact financial aid offices that do not exist. Lawmakers could not have intended this absurd result, and we have declined to "apply the [last antecedent] rule . . . if applying the rule would result in an absurd or nonsensical interpretation." *Bunker*, 169 Wn.2d at 578.

The majority does not address this absurdity. Rather, it proceeds to the broad public policy goals of the charity care act. *See* majority at 12-13 ("While there may be *differences in the exact statutory responsibilities of hospitals as compared to collection agencies*, the policy of the charity care act indicates that providing notice of charity care entirely underpins the benefits that the statute should provide." (emphasis added)). Despite recognizing that the statute spells out only the responsibilities of hospitals, the

4

majority feels compelled by policy to interpret "other written communications" to include collection agencies. *Id.* at 13-14.

But policy is not the first source of legislative intent. "We first examine the plain language of the statute 'as [t]he surest indication . . .'" of intent. *Cent. Puget Sound Reg'l Transit Auth. v. WR-SRI 120th N. LLC*, 191 Wn.2d 223, 233-34, 422 P.3d 891 (2018) (first alteration in original) (internal quotation marks omitted) (quoting *State v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015)). And subsection (8)(a)'s plain language limits its applicability to hospitals when it used the phrase "by a hospital." Even the policy statement of the charity care act reflects the legislature's intent to apply its charity care notifications to hospitals. In RCW 70.170.010(1), the legislature found that health care information is important to consumers to make health care choices and negotiate payments. One of the purposes of the chapter is to "establish a *hospital* data collection, storage, and retrieval system which supports these data needs." RCW 70.170.010(1) (emphasis added). The legislature further stated its intent "that charity care requirements and related enforcement provisions *for hospitals* be explicitly established" under the chapter. RCW 70.170.010(3) (emphasis added). Unsurprisingly the intent of the charity care act supports the notice requirement's plain language that hospitals must inform patients of financial aid, not collection agencies.

The meaning of RCW 70.170.060(8)(a) is plain. The legislature imposed a duty on hospitals to collect hospital debts.

Because the majority cannot overcome the plain language, it tries to build a bridge over it using assignment law. *See* majority at 12-14. An assignee "'steps into the shoes'"

5

of an assignor, carrying with it the rights and liabilities as identified in the assigned contract, but also "all applicable statutory rights and liabilities." *Id.* at 13 (internal quotation marks omitted) (quoting *Puget Sound Nat'l Bank v. Dep't of Revenue*, 123 Wn.2d 284, 292, 868 P.2d 127 (1994) (citing *Schultz v. Werelius*, 60 Wn. App. 450, 455, 803 P.2d 1334 (1991) (Petrich, J., dissenting))). This is a correct statement of the law but an incorrect application.

First, the majority misses an essential facet of what rights pass in assignment—*applicable* statutory rights and liabilities. *Id.* Statutory interpretation remains part of our assignment inquiry. *See Schultz*, 60 Wn. App. at 455 (Petrich, J., dissenting) (stating that a standing statute was ambiguous in the context of the law of assignments). Courts must interpret a statute to give effect to the legislature's intent. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846 (2007). As discussed above, RCW 70.170.060(8)(a) imposes a statutory duty only on hospitals. *See* BLACK'S LAW DICTIONARY 636 (12th ed. 2024) (defining "duty" as "[a] legal obligation that is owed or due to another and that needs to be satisfied").

Second, the majority seems to conflate assignment with delegation. An entity may assign a right and delegate a duty, but it cannot assign a *duty*. 29 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 74:27, at 407 (4th ed. 2021); RESTATEMENT (SECOND) OF CONTRACTS §§ 317, 318(1) (A.L.I. 1981). Performance of a duty may be delegated, subject to certain restrictions, but "neither delegation of performance, nor a contract to assume the duty discharges any duty or liability of the delegator-obligor." *Rsrvs. Dev., LLC v. Crystal Props., LLC*, 986 A.2d

6

362, 370 (2009) (citing RESTATEMENT (SECOND) OF CONTRACTS § 318(3)). In other words, an entity cannot contract away a statutory duty; and the delegator retains liability for breach of performance of a statutory duty. Here, the duty to provide notice of financial assistance falls to Skagit Valley Hospital. The hospital could not assign that duty to SB&C by contract but could delegate the *performance* of the duty. In such case, however, Skagit Valley Hospital would be liable for breach of that duty, yet Preston did not bring suit against Skagit Valley Hospital.

Finally, since we do not have the contract between Skagit Valley Hospital and SB&C in the record, we cannot determine whether SB&C undertook performance of the duty or whether the contract created an independent duty on SB&C to provide notice. Even if we could scrutinize the contract, it would conflict with Skagit Valley Hospital's patient policy. Skagit Regional Health's financial assistance policy states that a patient is not eligible for financial assistance if their account has been assigned to a collection agency and a court has granted judgment against it. *Financial Assistance and Sliding Fee Scale Policy*, SKAGIT REGIONAL HEALTH at 4.[1] SB&C was granted a judgment against Preston, as noted above, and Preston did not appeal the judgment or argue that it should be set aside.

---

[1] https://www.skagitregionalhealth.org/docs/default-source/finance-and-billing/sliding-payment-scale/2204-srh-financial-assistance_sliding-fee-scale-policy.pdf?sfvrsn=1079f139_1 [https://perma.cc/3VEM-2NEB]

Despite the majority's reliance on assignment law, it provides no bridge at all to overcome the plain statutory language of RCW 70.170.060(8)(a)—which imposes a limited duty on hospitals to collect on hospital debts.

2. The CPA

Preston echoes the majority's silent acknowledgment that the plain language of RCW 70.170.060(8)(a) does not encompass collection agencies. Preston brought no charity care act claims against SB&C. Preston's primary argument is that a collection agency's failure to provide notice of financial aid is an unfair or deceptive practice pursuant to the CPA. Preston does *not* argue that SB&C's allegedly deceptive collection practice is a per se CPA violation, that is, it violates RCW 70.170.060(8)(a). Majority at 11 ("Here, we analyze only Preston's non-per-se claim under the CPA."); *see Greenberg v. Amazon*, 3 Wn.3d 434, 454, 553 P.3d 626 (2024) ("The first CPA element may be predicated on a per se violation of a statute." (citing *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013))). Instead, Preston contends that SB&C's collection practice violates the public interest. *Greenberg*, 3 Wn.3d at 454 (citing *Klem*, 176 Wn.2d at 787). Preston even claims SB&C's practice is deceptive "*regardless* of whether SB&C is covered by the Charity Care Act." Pl.'s Answering Br. at 31 (emphasis added).

While the majority says that RCW 70.170.060(8)(a) resolves the case, the bulk of its analysis concerns Preston's CPA claim. Majority at 5-12. The majority's discussion is again revealing. It does not find that Preston can pursue a per se CPA claim, which

8

would be available in the case of a statutory violation, and instead agrees with Preston that the broader policy underlying the charity care act requires repeated notifications of financial aid and is not meant to regulate hospitals but deal with medical debt. *Id.* at 12. Thus, violations of subsection (8)(a) can violate the public policy of the charity care act and (presumably) constitute a deceptive act in violation of the public interest under the CPA. *See id.* That may be. But Preston's CPA claim is not part of the certified question. Whether a collection agency's practice is deceptive for failure to notify about charity care is simply not before us. Thus, the majority's decision to analyze and resolve that claim has no bearing on the only issue we have been tasked with answering and reveals a deep flaw in its conclusion that RCW 70.170.060(8)(a) places notification duties on collection agencies.

CONCLUSION

Because the majority expands the scope of RCW 70.170.060(8)(a) beyond its plain terms to encompass debt collection agencies, I respectfully dissent.

_____
Madsen, J.P.T.

_____
Uxccd.' IΩROVQ

9